IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CV-498-D

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| TIMOTHY J. WEIR, D.C., MARK DENNIS COYNE, M.D., CAROL KOOISTRA, M.D., ROSE WEIR, SARAH NICOLE COLGAN, WENDY DAVIS, FIRST CHOICE FAMILY HEALTHCARE, P.C., and MED PLUS MANAGEMENT COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

On December 21, 2007, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company (collectively "plaintiffs" or "Allstate") filed suit against chiropractor Timothy Weir ("Weir") and others (collectively "defendants") alleging that they "engaged in a scheme to defraud Allstate . . . by creating and submitting for payment false, fraudulent[,] and inflated medical invoices containing false and excessive charges . . . through the U.S. Mail." Compl. ¶ 1. On April 7, 2008, defendants filed a motion to dismiss the complaint [D.E. 64] pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Allstate responded [D.E. 85], and defendants replied [D.E. 87]. On June 27, 2008, Allstate moved for leave to file a sur-reply [D.E. 90], which this court denied [D.E. 93].

As explained below, the court grants in part and denies in part defendants' motion to dismiss

---

[1]On June 17, 2008, defendants submitted a corrected motion to dismiss [D.E. 88].

the complaint. Specifically, the court grants defendants' motion to dismiss as to Count II, V, and VII, and denies defendants' motion to dismiss as to Counts I, III, IV, VI, and VIII.

I.

Plaintiffs are three insurance companies. The defendants include a medical practice ("First Choice") and a medical management company ("Med Plus") formed by Weir, allegedly in an attempt to split medical fees with non-medical professionals. See id. ¶¶ 21–26. First Choice provides medical and physical therapy services to its patients who are injured in automobile accidents. Id. ¶ 84. These patients were not directly insured by Allstate; rather, Allstate would pay for their treatment arising out of personal injury claims. Id. ¶ 85. Med Plus holds a management services contract with First Choice. See id. ¶ 30. Weir recruited Dr. Carol Kooistra ("Kooistra") and others to serve as the owners of First Choice. Id. ¶¶ 27–28. Dr. Mark Coyne ("Coyne"), at times, served as the medical director of First Choice. See id. ¶¶ 36–38. First Choice also employed Weir's wife ("Rose Weir") and his two daughters ("Colgan" and "Davis"). Id. ¶¶ 1, 30, 49.

Allstate names Weir, First Choice, Med Plus, Coyne,[2] Kooistra,[3] Rose Weir, Colgan, and Davis (collectively "defendants")[4] in an eight-count complaint alleging common law fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and the North Carolina Racketeer Influenced and Corrupt Organizations Act ("NC RICO"), N.C. Gen. Stat. §§ 75D-1 et seq. Essentially, Allstate alleges that defendants submitted false insurance claims involving fraudulent invoices for medical services that were never performed,

---

[2]Coyne has failed to plead or otherwise defend the complaint against him. Accordingly, on July 23, 2008, the Clerk of Court entered Coyne's default [D.E. 95]. See Fed. R. Civ. P. 55(a).

[3]On April 18, 2008, Allstate voluntarily dismissed the complaint with prejudice as to Kooistra [D.E. 69].

[4]The term "defendants" refers to all defendants except Coyne and Kooistra.

2

unwarranted, or unrelated to the corresponding insurance claim. See id. ¶ 54. Based on defendants' false medical documentation, Allstate paid defendants. See id. ¶ 88. Further, defendants allegedly permitted untrained and unlicensed individuals to provide patient treatment and run the day-to-day operations of First Choice, misrepresenting this information to Allstate. See id. ¶¶ 56–59.

II.

In analyzing a motion to dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968–70 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006); accord Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson, 127 S. Ct. at 2200. Nonetheless, the court "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth, 444 F.3d at 319 (quotations omitted).

A.

Count I of the complaint alleges a RICO violation under 18 U.S.C. § 1962(c) as to the individual defendants only (i.e., Weir, Rose Weir, Colgan, and Davis). See Compl. ¶¶ 123–39. RICO creates civil liability for those who engage in a pattern of racketeering activity. See 18 U.S.C. §§ 1962, 1964. Racketeering activity includes mail fraud. Id. § 1961(1)(B). To state a claim under RICO, a plaintiff must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); see Dtex, LLC v. BBVA Bancomer, S.A., 405 F. Supp. 2d 639, 649 (D.S.C. 2005), aff'd, 214 Fed. Appx. 286 (4th Cir.

3

2007) (per curiam) (unpublished). Defendants move to dismiss Count I on grounds that Allstate fails to establish a racketeering enterprise and that Allstate's allegations amount to garden-variety fraud not warranting RICO treatment.

According to defendants, Allstate's complaint is defective because Allstate fails to identify an enterprise distinct from the individual defendants. See Defs.' Mem. in Supp. of Mot. to Dismiss [hereinafter Defs.' Mem.] 7–12. The term "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Defendants argue that because a corporation can function only through its employees and agents, that, when individuals commit predicate acts in the course of their employment and on behalf of the corporation, the employees and the corporation are not separate and distinct from one another. See Defs.' Mem. 7–8. Defendants premise their argument largely on Allstate's allegations that Weir is the alter ego of First Choice and Med Plus. See id. at 9–12; Compl. ¶¶ 100–14.

Defendants' argument fails for two reasons. First, the Federal Rules of Civil Procedure permit pleading in the alternative and the assertion of inconsistent claims. See Fed. R. Civ. P. 8(d)(2), (3). Allstate's allegations regarding Weir's ownership and control of First Choice and Med Plus, see Compl. ¶¶ 100–14, are separate from the allegations in Count I, which suggest that the individual defendants participated in and conducted the affairs of First Choice and Med Plus. See id. ¶¶ 123–139. Allstate's pleadings regarding Weir as the alter ego of First Choice and Med Plus address its theory of recovery. Allstate's complaint makes clear that where First Choice and Med Plus are pled as an enterprise, they are not named as defendants. See id. ¶¶ 133–34.

Second, Allstate's enterprise theory comports with the principles of corporate liability. In Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001), the Supreme Court explained that

4

a certain distinctiveness is required for RICO liability. Id. at 162–63. Where an employee "acting within the scope of his authority . . . conducts the corporation's affairs in a RICO-forbidden way," the separateness requirement is satisfied so long as the corporate employee is a natural person and is legally distinct from the corporation itself. Id. at 163 (quotation omitted); see United States v. Najjar, 300 F.3d 466, 484–85 (4th Cir. 2002) (finding distinctiveness requirement met where corporate owner was legally distinct from the corporation). Here, for purposes of Count I, Allstate pleads that the individual defendants are legally distinct from First Choice and Med Plus. See Compl. ¶¶ 133 –36.

Defendants also argue that Allstate's allegations amount to garden-variety fraud and do not warrant RICO treatment. See Defs.' Mem. 6. Although they do not directly challenge the continuity requirement, defendants cite Al-Abood v. Elshamari, 217 F.3d 225 (4th Cir. 2000), in which the Fourth Circuit cautions against "basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice," id. at 238 (quotation omitted). See Defs.' Mem. 6. A "'pattern of racketeering activity' requires at least two acts of racketeering activity" committed within ten years of each other. 18 U.S.C. § 1961(5); see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004). Although a minimum of two predicate acts is required, two acts alone do not necessarily establish a pattern. See Sedima, 473 U.S. at 496 n.14. To establish a "pattern of racketeering activity," the plaintiff must show that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

Allstate's RICO allegations sufficiently allege a "pattern of racketeering activity." Allstate alleges that defendants submitted a succession of fraudulent claims for nearly a decade. See Compl. ¶¶ 31–91; accord Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1561 (1st Cir. 1994)

5

(holding that ongoing submission of fraudulent claims to insurer satisfied continuity requirement and established a "pattern of racketeering activity"). Further, this action is distinguishable from Al-Abood, in which family friends victimized plaintiff through fraudulent real estate and investment schemes that happened to involve the mails. See 217 F.3d at 230, 238 ("[T]he narrow focus of the scheme here—essentially a dispute between formerly close family friends—combined with the commonplace predicate acts persuades us that the facts here do not satisfy the pattern requirement."). Here, although defendants contend that Allstate, like Al-Abood, is the only victim, defendants allegedly used their patients as a vehicle to defraud Allstate on a continuous and repetitive basis. In sum, Count I of the complaint survives defendants' motion to dismiss.[5]

B.

Count II of the complaint alleges a RICO violation under 18 U.S.C. § 1962(c) as to all defendants. See Compl. ¶¶ 140–45. Specifically, Allstate alleges an "innocent victim" enterprise-based RICO claim in which Allstate constitutes the enterprise through which defendants conducted racketeering activity. Id. ¶¶ 141–43. Section 1962(c) states, in relevant part, that "[i]t shall be unlawful for any person employer by or associated with any enterprise engaged in . . . interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Stating a RICO claim based on an "innocent victim" enterprise requires Allstate to (1) allege a sufficient nexus between the racketeering activity and the enterprise, and (2) allege that defendants participated in the operation or management of Allstate. See, e.g., United States v. Grubb, 11 F.3d 426, 439 n.24 (4th Cir. 1993).

---

[5] The court has reviewed Bridge v. Phoenix Bond & Indemnity. Co., 128 S. Ct. 2131 (2008), which held that a plaintiff asserting a RICO claim predicated on mail fraud need not show that it relied on the defendant's alleged misrepresentations. Id. at 2139. Here, defendants do not challenge the sufficiency of Allstate's allegations regarding the predicate mail fraud offenses. Thus, Bridge does not alter this court's analysis of defendants' motion to dismiss.

To satisfy the nexus requirement, Allstate must allege that defendants' racketeering activity involved Allstate's affairs. See, e.g., id. Such involvement may be shown either through a defendant's physical use of an enterprise or through a defendant's use of its relationship with the enterprise to commit the predicate RICO offenses. See, e.g., id. at 439–40. RICO does not require that the racketeering activity actually benefit the affairs of the legitimate enterprise. See id. at 439; United States v. Webster, 669 F.2d 185 (4th Cir.) [hereinafter "Webster II"], cert. denied, 456 U.S. 935 (1982), modif'g in part on reh'g, 639 F.2d 174 (4th Cir.) [hereinafter "Webster I"], cert. denied sub nom. Christian v. United States, 454 U.S. 857 (1981).[6]

Accepting the allegation in the complaint as true, defendants satisfy the nexus requirement. Defendants used their positions as medical services providers to commit the predicate racketeering offenses. By virtue of their relationship with Allstate, defendants allegedly submitted false claims and false medical documentation to Allstate through the mails seeking fraudulent reimbursement.

Allstate also must allege that defendants participated in the operation or management of Allstate. See, e.g., Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). In Reves, the Court held "that 'to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' . . . one must participate in the operation or management of the enterprise itself." Id. (quoting 18 U.S.C. § 1962(c)). The Court noted that section "1962(c) cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Id. Nonetheless, the Court held that

---

[6]In Webster I, the Fourth Circuit vacated a RICO conviction because the racketeering activity at issue (i.e., illegal drug trafficking) did not further the business of the enterprise (i.e., a legal tavern) charged in the indictment. 639 F.2d at 184–86. The Fourth Circuit rejected the tavern as a possible RICO enterprise, refusing to recognize an "innocent victim" enterprise. Id. at 185–86. In Webster II, the Fourth Circuit on rehearing reversed on this precise point, rejecting any requirement that the racketeering activity benefit the RICO enterprise. 669 F.2d at 186.

7

an "outsider" (i.e., one without a formal position in the enterprise) was not precluded from RICO liability. Id. In order for an outsider to meet the operation or management test, the outsider must "have some part in directing [the enterprise's] affairs." Id. at 179. In Reves, "while [the defendants] were undeniably involved in the enterprise's decisions, they neither made those decisions nor carried them out; in other words, the [defendants] were outside the chain of command through which the enterprise's affairs were conducted." United States v. Oreto, 37 F.3d 739, 750 (1st Cir. 1994); see United States v. Fowler, 535 F.3d 408, 418 (6th Cir. Ohio 2008) (interpreting Reves' operation or management test to require "making decisions on behalf of the enterprise or . . . knowingly carrying them out").

In support of its allegations that defendants satisfy Reves' "operation or management" test, plaintiffs cite P & B Autobody, in which the First Circuit upheld a jury verdict imposing RICO liability on an autobody shop for submitting false claims to an insurance company. 43 F.3d at 1559–60. The First Circuit reasoned that because "[a]ppraising allegedly damaged vehicles and investigating, processing, and paying automobile insurance claims are vital parts of Aetna's business," the autobody shop "participated" in Aetna's operation by acting with the purpose to cause Aetna to make payments on the false claims. Id. at 1559. The First Circuit concluded that the autobody shop materially affected, albeit indirectly, Aetna's corporate affairs. Id.

Defendants respond that the effect of defendants' alleged conduct fails to meet the operation or management test in Reves. See Defs.' Mem. 12–14. Defendants also contend that Webster II and Grubb are distinguishable and that P & B Autobody improperly extends Reves. See id. at 14 n.4.

Turning initially to defendants' second argument, the court agrees that the effect of defendants' alleged conduct on Allstate in this case is much more attenuated than that in Webster II and Grubb. In Webster II, the defendant (an individual) conducted racketeering activity through

a legal tavern—a small local business owned and operated by the defendant's housemate (and co-defendant). See Webster I, 639 F.2d at 183. In Grubb, the defendant (a state court judge) conducted racketeering activity through his judicial office in the Seventh Judicial Circuit of West Virginia—a local enterprise to which defendant was elected and through which he could influence local politics. See Grubb, 11 F.3d at 430, 439–40. As for P & B Autobody, the Fourth Circuit has not addressed an analogous case. Moreover, other district courts properly have criticized P & B Autobody for expansively interpreting Reves operation or management test. See, e.g., Workers' Comp. Reins. Ass'n v. Am. Int'l Group, Inc., No. 07-3371 (JNE/AJB), 2008 WL 880171, at *2 (D. Minn. Mar. 28, 2008) (unpublished) (rejecting plaintiff's innocent victim enterprise-based RICO claim because plaintiff failed to allege the requisite degree of participation in or conduct of the enterprise); Allstate Ins. Co. v. Stone, No. CV 07-1481-PHX-JAT, 2008 WL 802268, at *2–*4 (D. Ariz. Mar. 24, 2008) (unpublished) (rejecting P & B Autobody as an overly broad application of Reves operation or management test); Allstate Ins. Co. v. Siegel, 312 F. Supp. 2d 260, 275 (D. Conn. 2004) (rejecting P & B Autobody as a "free-wheeling interpretation of the operation and management test [that] would appear to be inconsistent with Reves").

In this case, plaintiffs essentially allege that defendants submitted (or caused to be submitted) false claims (including false medical documents) and that plaintiffs paid those claims. See Compl. ¶¶ 140–45. The allegations do not reflect that the defendants "conducted or participated" in the conduct of Allstate's affairs. See Reves, 507 U.S. at 179, 185. Defendants' alleged conduct did not rise to the level of participation in the operation or management of the enterprise itself. See id. The defendants did not make or carry out any decisions on behalf of the enterprise. Moreover, unlike P & B Autobody, where two of the insurance company's own appraisers knowingly played a role in defrauding the insurance company along with the owners and employees of the defendant auto body

9

shops, plaintiffs do not allege that Allstate employees played a knowing role in defrauding Allstate. Cf. P & B Autobody, 43 F.3d at 1552. Thus, P & B Autobody, does not assist plaintiffs. Because plaintiffs' allegations in Count II fail to satisfy the Reves' operation or management test, the court dismisses Count II of the complaint.

C.

Count III of the complaint alleges a racketeering conspiracy in violation of section 1962(d). See Compl. ¶¶ 146–49. Defendants move to dismiss Count III as cumulative to their arguments to dismiss Counts I and II. See Defs.' Mem. 15.

Section 1962(d) prohibits a conspiracy "to violate any of the provisions of subsections (a), (b), or (c)." 18 U.S.C. § 1962(d). "[A] plaintiff's allegations are sufficient if they support the conclusion that the defendants 'agreed that another coconspirator would commit two or more acts of racketeering.'" R.J. Reynolds Tobacco Co. V. SK Everhart, Inc., No. 1:00CV00260, 2003 WL 21788858, at *7 (M.D.N.C. July 31, 2003) (unpublished) (quoting United States v. Pryba, 900 F.2d 748, 760 (4th Cir. 1990)). Here, Allstate specifically alleges that "defendants conspired with one another to violate 18 U.S.C. § 1962(c)." Compl. ¶ 147. In light of the rulings on Counts I and II, Allstate's section 1962(d) RICO conspiracy claim as to Count I withstands defendants' motion to dismiss. To the extent that Count III relies on the allegations in Count II, such a claim does not withstand defendants' motion to dismiss.

D.

Counts IV and V are virtually identical to Counts I and II of the complaint, and allege corresponding violations of the NC RICO. See Compl. ¶¶ 150–65 (NC RICO claim against individual defendants); id. ¶¶ 166–73 (NC RICO innocent victim enterprise claim). Allstate alleges predicate racketeering offenses of (1) obtaining signatures by false pretenses in violation of N.C.

10

Gen. Stat. § 14-101; (2) committing larceny and receiving/possessing stolen goods in violation of N.C. Gen. Stat. §§ 14-71, 71.1, 72; and (3) obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100. Compl. ¶ 151; see also N.C. Gen. Stat. § 75D-3(c)(1) (defining "racketeering activity"). Defendants premise their motion to dismiss Counts IV and V on the dismissal of Counts I and II, arguing that the federal RICO and NC RICO statutes are similar and that North Carolina courts look to interpretations of the federal RICO statute when analyzing NC RICO claims. See Defs.' Mem. 15–16 (citing Kaplan v. Prolife Action League, 123 N.C. App. 720, 727–28, 475 S.E.2d 247, 252–53 (1996), aff'd as modified, 347 N.C. 342, 493 S.E.2d 416 (1997)(per curiam)). As explained above, Counts I states a legally and factually sufficient RICO claim. Count II does not. Accordingly, Count IV survives defendants' motion to dismiss. Count V does not.

E.

Count VI of the complaint alleges common law fraud against all defendants. See Compl. ¶¶ 174–80. Under North Carolina law, the elements of fraud are "'(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007) (quoting Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007)). Defendants contend that Allstate fails to state a claim because there is no false statement as a matter of law. See Defs.' Mem. 17.

In making this argument, defendants erroneously attempt to transform Allstate's North Carolina common law fraud claim into one brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., thereby subjecting the claim to different pleading requirements. See Defs.' Mem. at 17–24. For example, defendants argue that Allstate fails to attach a CMS-1500 form to their complaint. See id. at 17. Defendants also argue that Allstate's fraud claim fails to allege compliance

11

with a particular statute, regulation, or contractual term as a precondition to reimbursement and again cites the FCA. See Def.'s Mem. 18–21 (citing United States ex rel. Mikes v. Straus, 274 F.3d 687, 699 (2d Cir. 2001)). Notably, defendants fail to cite one case applying requirements of the FCA to a common law fraud claim under North Carolina law. The court rejects defendants' attempt to transport the FCA into a common law fraud claim under North Carolina law. Additionally, the court rejects defendants attempt to characterize Allstate's allegations concerning the submission of fraudulent medical invoices containing false and excessive charges as a mere difference in medical opinion regarding the medical necessity or the quality of services rendered. See Defs.' Mem. 22–24.

Accepting as true all factual allegations contained in the complaint, Allstate states a legally and factually sufficient common law fraud claim under North Carolina law in Count VI. Thus, the court denies defendants' motion to dismiss Count VI.

F.

Next, defendants argue that the thirty-day "investigate or pay" rule under N.C. Gen. Stat. § 58-3-100(c) precludes Allstate from asserting any predicate acts of fraud or common law fraud (Counts I through VI). See Defs.' Mem. 25–26. In making this argument, defendants rely exclusively on Allstate Insurance Co. v. Valley Physical Medicine & Rehabilitation P.C., 475 F. Supp. 2d 213, 223–25 (E.D.N.Y. 2007), vacated in part on recons., 555 F. Supp. 2d 335 (E.D.N.Y. 2008), a case in which the Eastern District of New York interpreted a similar New York statute requiring insurers to investigate and pay (or reject) all claims within thirty days of receipt. The district court initially held that an insurer's failure to timely deny medical services providers' claims precluded the insurer's fraud claims premised on alleged fraudulent billing or the provision of medical services by unlicensed professionals. See Allstate Ins. Co., 475 F. Supp. 2d at 225. On reconsideration, the district court vacated its earlier decision on this precise point and held that an

12

insurer would *not* be precluded from bringing fraud claims for fraudulent billing despite noncompliance with the state's thirty-day rule. See id. at 338–41.

In their memorandum in support of their motion to dismiss, defendants failed to note the district court's reversal on reconsideration, and accordingly withdraw their argument in their reply brief. See Defs.' Reply Br. 9 n.4. Review of the corresponding North Carolina statute, see N.C. Gen. Stat. § 58-3-100(c), and applicable case law likewise reveals no preclusion concerns. As such, Counts I, III, IV, and VI to which defendants' direct their argument survives defendants' motion to dismiss.

G.

Count VII of the complaint alleges fraudulent incorporation in violation of N.C. Gen. Stat. §§ 55B-2 and 55B-6 (sections of North Carolina's "Professional Corporation Act"). See Compl. ¶¶ 181–93. Defendants argue that Count VII should be dismissed because there is no private right of action for defendants' alleged violation of the Professional Corporation Act. See Defs.' Mem. 26–30. In response, Allstate essentially retracts its fraudulent incorporation claim and states that the allegations contained in Count VII constitute one of the misrepresentations defendants made to Allstate. See Pl.'s Mem. 26–27. In other words, Allstate does not seek to recover per se under a fraudulent incorporation claim in violation of the Professional Corporation Act; rather, Allstate argues that defendants misrepresented their corporate status and that this misrepresentation forms an element of Allstate's common law fraud claim in Count VI.

The Professional Corporation Act does not provide a private cause of action. See N.C. Gen. Stat. §§ 55B-10, -12 (describing requirements for incorporation and role of licensing board); see also 21 N.C. Admin. Code 32C.0103 (2008) (describing requirements for incorporation); cf. Webster v. Powell, 98 N.C. App. 432, 439, 391 S.E.2d 204, 208 (1990) (finding no private cause of action

for alleged violation of the North Carolina Code of Professional Responsibility); State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr. Inc., No. Civ.A 02-7389, 2005 WL 627969, at *5–*6 (E.D. Pa. 2005) (unpublished) (finding no private cause of action for alleged violations of the Pennsylvania Medical Practice Act and Chiropractic Practice Act). Moreover, to the extent Allstate argues that it merely alleges defendants' misrepresentation of its professional corporate status in Count VII without seeking actual recovery, Allstate makes these same allegations in an earlier subsection of the complaint entitled "Fraudulent Incorporation." See Compl. ¶¶ 21–30. Coupled with its "Demand for Relief," see Compl. para. XI (Count VII), at 48, Allstate's allegations in Count VII assert an unrecognized private cause of action under North Carolina's Professional Corporation Act. Accordingly, the court grants defendants' motion to dismiss Count VII for failure to state a claim.

H.

Lastly, Count VIII seeks punitive damages against all defendants. See Compl. ¶¶ 194–96. Defendants seek dismissal on grounds that Allstate fails to state a single claim upon which relief may be granted. See Defs.' Mem. 31–32. As discussed, the complaint states numerous claims, rendering defendants' argument moot. Thus, Count VIII survives defendants' motion.

III.

As explained above, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss [D.E. 64, 88]. Counts II, V, and VII fail to state a claim upon which relief may be granted and are dismissed. The balance of the claims survive.

SO ORDERED. This 10 day of November 2008.

JAMES C. DEVER III
United States District Judge